ADANTE D. POINTER, ESQ., SBN 236229
PATRICK BUELNA, ESQ., SBN 317043
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiff

PATRICK D. MORIARTY, State Bar No. 213185
pmoriarty@aghwlaw.com
JOHN B. ROBINSON, State Bar No. 297065
jrobinson@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:     (415) 697-2000
Facsimile:     (415) 813-2045

Attorneys for Defendants
CITY OF ALAMEDA, RANDY FENN, ERIC MCKINLEY, JAMES FISHER, and CAMERON LEAHY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITH ARENALES, individually as the biological mother of Decedent MARIO GONZALEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ALAMEDA, a public entity; FORMER CITY OF ALAMEDA INTERIM POLICE CHIEF RANDY FENN, in his individual and official capacities; ALAMEDA POLICE OFFICERS ERIC MCKINLEY, JAMES FISHER, and CAMERON LEAHY, and DOES 1-10, Jointly and Severally,<br><br>Defendants. | **Case No.: 4:22-cv-00718-DMR**<br>     4:21-cv-09733-DMR (Related Case)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:          May 04, 2022<br>Time:         1:30 p.m.<br>Courtroom: 4, 3rd Floor (Oakland)<br>Judge:        Hon. Donna M. Ryu |

Pursuant to Federal Rule of Civil Procedure 16(a) and Civil Local Rule 16-9 of the U.S. District Court for the Northern District of California, this Joint Case Management Statement is jointly submitted by the following parties: Plaintiff EDITH ARENALES, individually as his biological mother of decedent Mario Gonzalez; Defendants City of Alameda, Alameda Interim Chief of Police Randy Fenn, and Alameda Police Officers Eric McKinley, James Fisher, and Cameron Leahy.

1. **JURISDICTION AND SERVICE**

This is a civil rights, wrongful death, and survival action arising under 42 U.S.C. §§ 1983 and 1988, the Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Plaintiff asserts that this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiff has filed Waivers of Service executed by Defendants, and all named Defendants have appeared in the case.

2. **FACTS**

   a. **Plaintiff's Statement:**

This is a civil rights, wrongful death, and survival action arising from the unreasonable and excessive use of force by Defendants Eric McKinley, James Fisher, and Cameron Leahy, resulting in the wrongful death of Mario Gonzalez.

On April 19, 2021, on or around 10:20 a.m., a resident of Alameda, CA, placed a call for service with APD about Mario Gonzalez's lawful presence in Scout Park, a small public park located across the sidewalk from the caller's home. The caller stated there was a man (Mario Gonzalez) talking to himself and not making any sense, standing near the caller's front yard fence. The caller stated that the man was Hispanic and was not doing anything wrong, but that the man's presence was scaring the caller's wife. Shortly thereafter, another resident called APD to report a similarly described man at Scout Park who appeared to be breaking security tags off alcohol bottles in his possession.

Defendant APD Officer Eric McKinley arrived at Scout Park roughly 20 minutes after the first call for service, and encountered Mario Gonzalez peacefully standing in the park. Defendant McKinley had no information that Mario Gonzalez was involved in any crime. Defendant

1  McKinley asked Mr. Gonzalez if he was alright, and Mr. Gonzalez stated he was but added that he
2  did not know what was going on.  Mr. Gonzalez appeared confused, and possibly intoxicated,
3  throughout his interaction with Defendants.  Defendant McKinley questioned Mr. Gonzalez about
4  his name and what he was doing in the park, and other questions.  Mr. Gonzalez remained calm and
5  polite as he talked with Defendant McKinley, but also had difficulty maintaining his focus, often
6  becoming distracted or trailing off during his answers.  Roughly two minutes into the encounter,
7  seeing Walgreen's basket with liquor bottles on the ground nearby, Defendant McKinley instructed
8  Defendant APD Officer James Fisher, who had not yet arrived on the scene, via radio to check with
9  employees at the Walgreen's Drug Store across the street from Scout Park regarding whether
10 anyone had recently walked off with stolen alcohol or merchandise.  Roughly two minutes and
11 thirty seconds later, Defendant Fisher notified Defendant McKinley via radio that Walgreen's had
12 not had anyone walk off with stolen merchandise.  Defendant McKinley continued to detain and
13 question Mr. Gonzalez despite that he was not in need of any assistance and despite that Defendant
14 McKinley had developed no facts or reasonable suspicion that Mr. Gonzalez was involved in any
15 crime.
16      Roughly seven minutes after Defendant McKinley first encountered Mr. Gonzalez,
17 Defendant Fisher arrived on the scene.  The two officers continued to demand Mr. Gonzalez's name
18 and whether he had any identification.  About two minutes after Defendant Fisher's arrival,
19 Defendants McKinley and Fisher—without reasonable suspicion, probable cause, or any legal
20 basis—escalated the otherwise calm interaction by using force, each grabbing one of Mr.
21 Gonzalez's arms and trying to force them behind his back through the use of pain compliance
22 holds.  Based on officers' body camera videos, Mr. Gonzalez appeared to flinch and stiffen his arms
23 as Defendants tried to force them behind his back, despite having no lawful cause to arrest him.
24 Still, Mr. Gonzalez did not actively or aggressively resist, remained non-threatening, and
25 maintained a benign tone with Defendants.
26      After failing to strong-arm Mr. Gonzalez into handcuffs, Defendants McKinley and Fisher
27 forcefully took Mr. Gonzalez to the ground, where they quickly pinned him face-down and on his
28 stomach in a prone position.  Defendant McKinley climbed on top of Mr. Gonzalez's legs while

retaining control of Mr. Gonzalez's left arm, while Defendant Fisher got on top of Mr. Gonzalez's back and wrested Mr. Gonzalez's right arm out from underneath his body.  Defendants kept Mario Gonzalez in a prone position with substantial weight on his back, and in multiple pain compliance holds, while handcuffing him.  After roughly two minutes, during which time Defendant Fisher was on top of Mr. Gonzalez's back, Defendant Fisher handcuffed Mr. Gonzalez and Defendant McKinley locked the handcuffs.  Defendant Fisher then rested, still on top of Mr. Gonzalez's back, for roughly 30 seconds, then shifted his positioning, placing his knee onto Mr. Gonzalez's upper back and shoulder area and applying significant body weight to keep Mr. Gonzalez, now handcuffed, pinned down in a prone position.  Defendant McKinley held Mr. Gonzalez down by his left elbow so he could not roll over.  Defendants McKinley and Fisher continued to forcefully pin Mr. Gonzalez on the ground, handcuffed and in a prone, asphyxiating position for nearly three additional minutes.  During that time, Defendant Fisher used his body weight, applied through his knee, elbows, forearms, and hands, to keep Mr. Gonzalez pinned down.  Roughly two minutes before Mr. Gonzalez became unresponsive, Defendant Leahy arrived on the scene and joined in, using his body weight to pin Mr. Gonzalez's legs and back down.

APD bodycam footage of the incident shows that Defendant Fisher consistently placed his body weight forward—on the front of his feet, and not on his heels—and onto Mr. Gonzalez's upper back and shoulders throughout the incident.  At one point, Defendant Fisher even remarked, "he's lifting my full body weight up."  As Mr. Gonzalez increasingly struggled to breath in a dangerous, asphyxiating position for over five minutes in total, he made several whimpers and guttural yells, and was clearly in distress.  Despite squirming around in a desperate attempt to breath, Mr. Gonzalez never attacked, threatened, or violently resisted any officer.  During the last conscious minute of Mr. Gonzalez's life, Defendant McKinley told him, "I think you just had too much to drink today."  Moments later, Defendant Fisher—winded from forcefully using his body weight to keep Mr. Gonzalez in a prone position—asked Defendants McKinley and Leahy if they should roll Mr. Gonzalez onto his side, to which Defendant Leahy replied, "No, I don't wanna lose what I got, man."  Moments before noticing Mr. Gonzalez was unresponsive, Defendant Fisher inquired for the first time, "Do we have no weight on his chest?"  Then, observing, Defendant

1  McKinley, Defendant Fisher stated "No, no. No, no. No weight." Around that point, Mr. Gonzalez
2  had stopped moving, and when Defendant Fisher finally stopped using his knee to pin Mr.
3  Gonzalez down, the officers rolled Mr. Gonzalez over and found him limp and unresponsive.

4　　Mario Gonzalez died as a result of Defendants' use of excessive force, improper restraint,
5  mechanical asphyxia, and positional, restraint, and compression asphyxiation of him. For
6  substantial periods of time, Defendants McKinley, Fisher, and Leahy each kept their own body
7  weight on Mr. Gonzalez's head, neck, shoulders, back, and legs, without objectively reasonable
8  justification, posing a substantial risk of death or injury to Mr. Gonzalez. Reasonable officers
9  would have known such use of force was deadly. Defendants McKinley, Fisher, and Leahy, acting
10 as integral participants and under the totality of the circumstances, used, caused the use of, and
11 tolerated excessive, unnecessary, and deadly force against Mr. Gonzalez, causing his death. None
12 of those officers intervened to stop this illegal seizure or to stop the other officers from using the
13 excessive and illegal force that was evident in front of them.

14　　Plaintiff EDITH ARENALES, Mario Gonzalez's biological mother, brings claims
15 individually for violations of her rights under the United States and California Constitutions, 42
16 U.S.C. § 1983; California Civil Code §§ 52.1.

17　　**b.  Defendants' Statement**

18　　On April 19, 2021, shortly after 10:00 a.m., the Alameda Police Department received two
19 calls from residents near the 800 Block of Oak Street regarding a man, later identified as Mr.
20 Gonzalez, acting strangely and possibly in the possession of stolen property. Officer McKinley was
21 the first to arrive and speak to the man. Mr. Gonzalez had two shopping baskets from a nearby
22 store, one of which contained a bottle of alcohol with the security device still attached. Mr.
23 Gonzalez showed obvious signs of impairment. Several minutes later, Officer Fisher arrived on
24 scene. Mr. Gonzalez was largely unresponsive to the officers' questions and a decision was made to
25 place Mr. Gonzalez in handcuffs. Mr. Gonzalez struggled with the officers, and it took
26 approximately two minutes to secure the handcuffs. Mr. Gonzalez then suddenly became
27 unresponsive. Officers immediately checked his pulse and began medical aid. Mr. Gonzalez was
28 transported to the hospital where he was later pronounced deceased.

3. **LEGAL AND FACTUAL ISSUES:** The principle legal and factual issues in dispute include the following:

    i. Whether Defendants violated Mario Gonzalez's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the U.S. Constitution;

    ii. Whether Defendants violated Mario Gonzalez's right to be free from excessive and unreasonable deadly force in the course of an arrest or detention as secured by the Fourth Amendment to the U.S. Constitution;

    iii. Whether Defendants wrongfully interfered with Plaintiff EDITH ARENALES's familial relationship with her son, in violation of the Fourteenth Amendments to the U.S. Constitution, which provide for the right to companionship, society, and support of each other free from governmental interference (per the due process standard);

    iv. Whether Defendants McKinley, Fisher, and Leahy are entitled to qualified immunity;

    v. Whether the allegedly unconstitutional actions and/or omissions of Defendants, were, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), pursuant to the customs, policies, practices, and/or procedures of Defendant City of Alameda;

    vi. Whether Defendants City of Alameda, Defendant former Chief of Police Randy Fenn or Does 1–10 are supervisorily liable by failing to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants McKinley, Fisher, Leahy, and Does 1–10, and other APD personnel, with deliberate indifference to Plaintiff's constitutional rights, or for their ratification of the individual officers' unlawful conduct;

    vii. Whether, pursuant to California Civil Code § 52.1, Defendants McKinley, Fisher, Leahy, and Fenn violated Mario Gonzalez's rights with reckless disregard or by threat, intimidation, or coercion;

        viii.    The type and amount of Plaintiff's damages;

**4. MOTIONS:**

Plaintiff may move for partial summary judgment based on discovery, if appropriate. The parties reserve their rights to bring all other appropriate motions.

**5. AMENDMENT AND PLEADINGS:**

Plaintiff may seek leave to amend the operative complaint to add parties and/or claims should a basis for such amendment become apparent after some discovery.

**6. EVIDENCE PRESERVATION:**

The parties have agreed to preserve Electronically Stored Information (ESI) and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in this action, including putting Defendants on notice to preserve all incident-related ESI, including all such ESI stored on the individually-named Defendants' personal media devices, computers, email, phones, and social media.

**7. DISCLOSURES:**

The parties have agreed to exchange their initial disclosures by May 04, 2022.

The parties need to agree and submit a protective order to the Court for its approval prior to exchanged discovery.

**8. DISCOVERY:**

    a. **Plaintiff's Discovery**

Plaintiff intends to propound discovery within the Court's scheduled timeline including but not limited to written discovery for police reports, policies, witness statements related to the incident and depositions of the Defendant officers, the personnel files of involved officers, third party witnesses and any expert witnesses including a police practices expert and medical expert.

    b. **Defendants' Discovery**

**9. CLASS ACTIONS:**

This is not a class action.

**10. RELATED CASES:**

Plaintiff filed a Motion to Relate this case to Gonzalez, et. al. v. City of Alameda et. al. (4:21-cv-09733-DMR) on March 15, 2022 which was granted on March 30, 2022.

**11. RELIEF**

Plaintiff EDITH ARENALES seeks compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable; punitive damages under 42 U.S.C. § 1983 and California law; and all other damages, penalties, costs, interest and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Civil Code §§ 52.1 and 52 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise may be allowed by California and/or federal law.

**12. SETTLEMENT AND ADR:**

The Parties in both (factually related) cases have agreed to an early settlement conference with Magistrate Judge Laurel Beeler and will soon file a stipulation assigning this case to Judge Beeler for the purpose of settlement. A settlement conference with Judge Beeler is scheduled for June 10, 2022, beginning at 10:30 a.m.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:**

Plaintiffs have consented to proceeding before a Magistrate Judge for all further proceedings.

**14. OTHER REFERENCES:**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES:** None.

**16. EXPEDITED SCHEDULE:** Not applicable

**17. SCHEDULING:**

The parties do not currently agree on a proposed case schedule.

Defendants propose to revisit a schedule at the next case management conference.

Plaintiff proposes that, the court adopt the same case management scheduling order that was ordered in the related case including having a further Case Management Conference on August 3, 2022 at 1:30 pm. To that end, Plaintiff proposes the following case schedule:

| EVENT | DATE |
|---|---|
| JURY TRIAL | 11/6/2023 |
| FACT DISCOVERY | 6/13/2023 |
| EXPERT DISCOVERY | 6/13/2023 |
| REBUTTAL EXPERT DISCLOSURES | 6/27/2023 |
| EXPERT DISCLOSURE DEADLINE | 7/11/2023 |
| LAST DAY TO HEAR DISPOSITIVE MOTIONS | 8/10/2023 |
| SETTLEMENT CONFERENCE | 06/10/2022 |
| PRE-TRIAL CONFERENCE | 10/25/2023 @ 3:00 pm |

## 18. TRIAL

All parties have requested a jury trial in this case. The parties estimate that a jury trial is expected to take approximately 10 full court days.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:

The parties are unaware of any non-parties whose interests could be substantially affected by the outcome of the proceeding.

## 20. PROFESSIONAL CONDUCT:

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21. OTHER MATTERS:

None

///

///

///

| | |
|---|---|
| DATED:  April 27, 2022 | Respectfully submitted, |
| | |
| | **POINTER & BUELNA, LLP** |
| | **LAWYERS FOR THE PEOPLE** |
| | |
| | /s/ Adante D. Pointer |
| | ADANTE D. POINTER |
| | COUNSEL FOR PLAINTIFF |
| | |
| DATED:  April 27, 2022 | ALLEN, GLAESSNER, HAZELWOOD & WERTH |
| | |
| | /s/ *Patrick D. Moriarty* |
| | PATRICK D. MORIARTY |
| | JOHN B. ROBINSON |
| | Attorneys for Defendants |